JAMES C. PATTRIDGE *et al.*, Respondents, *v.* DANIEL GILDER-
MEISTER, Appellant.

Where the plaintiff entered into a contract with the defendant to deliver him a
quantity of chairs, a part of which he then had, and a part of which were
to be manufactured, and to take in payment therefor the notes of M. at six
months, and delivered the chairs he had on hand; and subsequently demanded
of the defendant the notes of M. for the chairs delivered, which were refused —
in an action to recover for the chairs delivered, *held*, That the plaintiff might
recover.

That in order to put the plaintiff in the wrong respecting the chairs to be manu-
factured and delivered, the defendant should have tendered the notes of M.
and demanded the chairs.

That the plaintiff agreed to deliver the chairs only upon the credit of M., and
was entitled to the notes on the delivery of the chairs or any part thereof.

That the refusal of the defendant to deliver to the plaintiff, the notes of M. for
the chairs delivered when demanded, exonerated the plaintiff from any fur-
ther delivery of the chairs, and entitled him to his action for those already
delivered.

THIS action was brought to recover the price of a quantity
of chairs alleged to be sold by the plaintiffs to the defend-
ant in the summer of 1857, and which were to be paid for in
the paper of J. A. Mochado & Co.

The complaint sets out the agreement to purchase, and pay
in the notes of Mochado & Co., having not more than six
months to run before maturity, and that plaintiffs, pursuant
to said agreement, delivered to the defendant chairs to the
amount of $946, and demanded the notes of Mochado & Co.,
which defendant refused to deliver. Whereupon judgment
was demanded for $946.

The answer denies all the allegations in the complaint, and
sets up by way of defense that defendant, as the agent of one
Colquitt, entered into an agreement with plaintiffs to pur-
chase a quantity of chairs amounting to $2,310, to be delivered
on board the ship Ellen Hood, then lying in the port of New
York, and to sail for Valparaiso·in June, 1857, and to pay for
said chairs, when the whole quantity was delivered, in the
notes of Mochado & Co., having not more than six months
to run before maturity. That plaintiffs delivered on board

said vessel, a part only of the whole quantity of chairs, alleging that they could not get the whole quantity ready, and requesting further time to deliver the residue, and it was agreed that the residue of the chairs should be delivered on board the ship Western to sail for Valparaiso about the 1st August, 1857. That plaintiffs neglected and refused to deliver the balance of said chairs, and never have delivered the same. The defendant also averred that Colquitt was ready and willing to deliver the notes of Mochado & Co., on full performance of the agreement by the plaintiffs. And that plaintiffs were fully informed of defendant's agency for Colquitt.

On the trial, John Pattridge was examined as a witness, and testified in substance that he was one of the plaintiffs, and that on the 9th June, 1857, he sold to defendant a bill of chairs, exhibited by him, amounting to $946. Defendant wanted to pay in paper of Mochado & Co. The next day the witness informed defendant that he had but about half the quantity he (defendant) wanted, on hand, and would deliver it for the paper. Defendant assented and gave the shipping directions, and witness shipped accordingly. He says he did not agree to deliver any more. Defendant said he would have another ship ready in two months, and the witness told him he would be ready then, but the chairs were not, at the time of the conversation, manufactured. In four or five weeks, witness called on defendant and asked him for the notes, and he said that he (witness) must go to Colquitt and get pay as he had purchased for him (C.) Witness told him he knew nothing about C., he had sold the goods to him (defendant), and would look to him for pay. No other reason was given for not delivering the notes.

On cross-examination, the witness testified that their original memorandum was for chairs to the amount of $1,930, that he did not agree, absolutely, to deliver $2,300, of chairs; the agreement was, to deliver what he had ready for Mochado & Co's notes. Delivery of goods to the amount of $936 was admitted.

Other witnesses were called on the part of the plaintiff, whose evidence tended to corroborate the statements of the witness Pattridge.

On the part of the defense, several witnesses were called, whose evidence tended to prove that defendant acted in the purchase as agent for Colquitt, that the agency was communicated to the plaintiffs, that the purchase was of chairs to the amount of $2,300, which were to be paid for in notes of Mochado &. Co., on delivery of the whole quantity of chairs purchased. That, by mutual agreement, part only were delivered on the ship Ellen Hood, and the rest were to be delivered on the Western, which was to sail the 1st of August, then next, and that some were delivered on board of said ship, or elsewhere, except those delivered on board the Ellen Hood. The defendant testified, that when he was called on for the notes, he told Pattridge, that Colquitt was sick, and that he (Colquitt) would not deliver the notes, as plaintiffs had not fulfilled their contract.

The evidence being closed, the court charged the jury, that if they believed defendant was in fact the purchaser of the goods, to the amount of $2,310, then he was liable for the amount in suit, unless the non-delivery of the balance of the goods by the plaintiffs excuses him. And whether or not they were excused depended on two questions.

1. Whether all the chairs to the amount of $2,300, were to be delivered before the notes were to be delivered. If not, then there is no good ground of objection.

2. If they were so to be delivered then the exemption of defendant from liability will depend on what answer defendant made when applied to for the notes. He (defendant) did not make the non-delivery of the residue the excuse, but claimed that Colquitt was the purchaser.

If the goods were purchased on the credit of the defendant he is liable, because if the contract was an entire one, he did not object to its being completely fulfilled as a reason for not giving the notes. If delivered on Colquitt's credit, defendant was entitled to a verdict.

The defendant's counsel then requested the court to charge that if the jury believed that if the contract between plaintiffs and either defendant or Colquitt was to furnish $2,300 worth of chairs, plaintiffs cannot recover for the amount actually furnished, unless the contract has been waived by the consent of the parties, or the other party to the contract has released the plaintiffs. That the denial of the contract by the defendant when applied to for the notes, if found by the jury, is not a waiver of performance on the part of the plaintiffs.

That if the jury find that the insolvency of Mochado & Co. occurred after the delivery of the goods in suit, the fact that they had become insolvent was not a sufficient ground for plaintiffs to rescind the contract.

The court refused to charge either proposition as requested, and defendant's counsel excepted.

The jury rendered a verdict for plaintiffs for $1,046.83, and judgment was rendered thereon, and the same was affirmed at a General Term of the Supreme Court of the city of New York, and from that judgment the defendant appeals to this court.

*James Emott,* for the appellant.

*J. T. Hoffman,* for the respondent.

DENIO, Ch. J. The only real question in the case was whether the purchase of the chairs was made by the defendant, or by Colquitt through the defendant as his agent. This question was fairly left to the jury, and their finding is that the purchase was by the defendant and not by Colquitt.

The other branch of the defense was that the sale of the chairs was part of an entire contract for a larger quantity, and that the plaintiffs had failed fully to perform on their part, and could not therefore recover for their partial performance. I do not think their claim was sustained by any view of the evidence. Upon the defendant's testimony the chairs which were not delivered on board the Ellen Hood, were to be subsequently manufactured and delivered ; they were contracted to

be shipped by the defendant by the Martaro, a vessel he afterward sent to South America. In order to put the plaintiffs in the wrong, respecting the chairs to be manufactured, the defendant should have shown that he called on them and offered to deliver the notes of Mochado which the plaintiffs had agreed to receive. This was not done, and it does not even appear that the vessel in which they were to be sent ever sailed or was ever ready to sail. The plaintiffs did not agree to deliver the goods on the credit of any one but Mochado. They were not bound to part with the chairs without at the same time receiving the notes, and they were never offered such notes or required to deliver any more chairs. They have therefore committed no breach of the agreement on their part, which should deprive them of payment for the chairs delivered.

If we should consider the contract for the chairs manufactured and delivered, and for those to be afterward made and delivered as parts of the entire contract, still the plaintiffs were not to wait for the payment for those delivered until the others should be manufactured. They were to take the notes of Mochado having six months to run, but they were to have the notes when they delivered the chairs. They seem not to have immediately exacted the notes for the chairs delivered, but they demanded them sometime afterward, but instead of delivering them, the defendant, the purchaser, repudiated the contract and refused to deliver them. This was a breach of the contract on his part, which relieved the plaintiffs from the obligation to deliver any more property, and enabled them to sue immediately for that which they had delivered.

The foregoing is the result of the evidence according to the testimony on the part of the defendant, and it is apparent from it that there was nothing to submit to the jury, except the question, whether the defendant or Colquitt was the contracting party. The judge should have instructed the jury that if they found against the defendant on that issue of fact they should give their verdict for the plaintiff. By leaving further questions to the jury, he give the defendant a

chance for a verdict to which he was not entitled. Of this he could not of course complain.

The charge actually given was not excepted to. The further positions which he desired to have charged, were either covered by the charge, or were in themselves incorrect, or were immaterial. He desired to have the jury instructed that the plaintiffs could not recover unless the parties were agreed to waive the further delivery, as the defendant had released the plaintiffs from further performance. This leaves out of view the rescission of the contract by the defendant refusing to perform on his part, which was conceded by the defendant's evidence, and was the only waiver or release indicated by any part of the evidence. The judge had correctly explained the effect of such refusal to perform in the charge already given.

He then desired to have the jury told that the defendant's denial of the contract when he was called upon for the notes of Mochado, for the chairs already delivered, was not a waiver of the further performance by the plaintiff. The judge had already instructed them correctly on that point when he told them that the claim of the defendant, that Colquitt was the purchaser and his consequent refusal to give the notes dispensed with a further performance on the part of the plaintiffs.

The last proposition was irrelevant. The plaintiffs had claimed notes on the ground of Mochado's insolvency. That fact certainly would not relieve the defendant from receiving their notes according to his agreement. He did refuse, and thus broke his agreement, and became bound to compensate the plaintiffs for the goods which had been delivered.

I think the appeal was wholly without merit, and that the judgment appealed from should be affirmed with damages for the delay.

All concur except MULLIN, J., who dissents.

MULLIN, J. (dissenting.) The only questions before us for examination on this appeal, are those arising on the refusal of the court to charge as requested by the defendant's counsel.

There were no exceptions taken to the rulings on the trial, nor to the charge given to the jury. The refusal of the court being to vary the charge as given, makes it necessary not only to inquire whether the refusals to charge as requested were erroneous, but also whether the charge, as given, embraced the propositions to which the requests applied.

The first request to charge was that if the jury believe from the evidence that the contract was to furnish $2,310 worth of chairs the plaintiffs could not recover for the amount actually furnished unless the contract had been waived by the consent of the parties, or the other party to it had released the plaintiffs.

The first branch of this request is only another mode of stating an elementary legal proposition, that in order to entitle the vendor of personal property to recover in an action for the price, he must prove performance on his own part. Full performance is in such cases a condition precedent to his right to recover. The rigor with which this rule is applied is very well illustrated in the case of *Oakley* v. *Morton* (1 Kern., 25). In that case, Oakley agreed with Morton to keep twenty cows during the dairying season and sell the butter made to Morton at a price agreed upon, to be delivered at a time and place specified. Oakley, at the commencement of the season put twenty cows on his farm and made butter therefrom until the end of the season, except that about the first of September three of the cows, and two about the middle of October, ceasing to yield more than about a quart of milk each per day, and to be of no value for dairying purposes, were respectively sold at those dates. The butter made from the cows was sent by direction of the defendant to a commission merchant in New York for sale, and it was sold, but the commission merchant failed, and the action was brought to recover the contract price of the butter. The plaintiff had a verdict at the circuit. The defendant moved for a new trial on a bill of exceptions, which was denied, and judgment was rendered for the plaintiff, and there was an appeal to this court, and it was held that the plaintiff was not entitled to recover because he had not performed his con-

tract. The keeping twenty cows for the whole season was a condition precedent which the plaintiff was bound to perform, and not having performed it, he could not recover, and the judgment was reversed.

In *Baker* v. *Higgins* (21 N. Y., 397), Baker agrees to deliver to the defendant 25,000 pale brick on the dock at East Troy, at $3 per thousand, and 50,000 hard brick at the same place at $4 per thousand. He actually delivered 10,500 of each, and the defendant refusing to pay until the whole were delivered, the action was brought for the price of the quantity delivered. It was held that he could not recover ; that delivery or readiness and an offer to deliver the entire quantity was a condition precedent to payment. The defendant was unquestionably entitled to the instruction, and unless the court had given to the jury substantially the same instruction, the refusal was erroneous and the judgment must be reversed. The charge was that if defendant was the purchaser of goods to the amount of $2,310 he was liable for the amount for which the action was brought unless the non-delivery of the balance of the goods by the plaintiffs excuses him ; and whether he was excused depended on two questions : First, whether all the chairs were to be delivered before payment, if not, then the defendant was liable, and second, if the whole were to be delivered before payment, then the plaintiff was relieved from the delivery of the whole, provided defendant put his refusal to pay on the ground that he was not the purchaser and not upon the non-delivery of the whole quantity of chairs. ·

It will be perceived that the charge presents to the jury the same proposition contained in the request, accompanied with sundry modifications not in terms contained in the request. But the request after stating that plaintiff could not recover without delivery of the whole of the chairs, was in the following words, " *unless the contract has been waived by the consent of the parties or the plaintiff was relieved by the other party.*" This is only another mode of expressing the same proposition stated in the charge, because by the charge the court instructed the jury that if the defendant put his refusal

to pay, on the ground that he did not purchase the chairs, and did not on the omission to deliver, it was an excuse for the non-delivery, or in other words, it operated as a waiver of the condition precedent.

It seems to me, therefore, that the court was right in refusing to charge in accordance with the first request, having previously charged substantially as requested.

The second request must, however, be taken in connection with the first, as it is necessary to give point and effect to the first request.  The second request is in these words: " The denial of the contract by the defendant when applied to for the notes is not a waiver of performance on the part of the plaintiff."  The charge was, defendant was liable if he did not put his refusal to deliver the notes on the ground of non-delivery of the whole quantity of chairs by the plaintiff. The effect of the refusal to deliver because defendant was not the purchaser is not put to the jury in the charge, and if this construction could have had any influence on the verdict it was error in the court to refuse to give the instruction.

In one part of this charge the jury are told that the defendant's liability depended on the answer he gave when called on for the notes.  The judge does not state to them what the answer was, but instructs them that an answer which he did not give rendered him liable.  I am unable to conjecture what effect the charge, if given as requested, would have had on the jury, but I can perceive no reason why defendant should not have had the benefit of an instruction as to the effect of what he did say.  The position of the judge was: I will not instruct the jury as to the legal effect of the answer given by the defendant to the plaintiffs' request, but I will instruct them that an answer which he might have given, but did not give, was fatal to him.

If it be said that the effect of the charge and refusal was to inform the jury that what was said by the defendant at the time of the demand of notes was immaterial, so long as he did not place his refusal on the grounds of non-delivery of the whole quantity of the chairs, the answer to the suggestion is that no such instruction was given, and if it had been

given, I think it would have been erroneous. The two requests taken together were entirely sound and should have been given to the jury. It is unquestionably true that plaintiff was bound to deliver the whole of the chairs unless the conditions were waived or the plaintiff relieved, and the answer given could not operate as a waiver of performance.

The plaintiff had given evidence of the insolvency of Mochado & Co. To hold the plaintiff to complete performance before he could recover, was, in effect, compelling him to take in payment the notes of an insolvent firm, a result a jury would struggle to avoid unless compelled to come to it by positive instructions from the bench or by the overwhelming force of the evidence. It was due to the defendant under such circumstances, that he should have the benefit of any construction which could be legitimately given in order to relieve him from the improper influence of the evidence of insolvency. The instruction asked for as to the legal effect of the insolvency of Mochado & Co., was not irrelevant, and should have been given. There is reason to apprehend that the refusal to give the instruction might be treated as equivalent to saying that the insolvency of Mochado & Co. was a sufficient ground for plaintiffs to rescind the contract, and if so understood, was fatal to the defendant.

While the court should not be astute in searching for grounds on which to reverse a judgment or set aside a verdict, yet every one conversant with legal proceedings knows to what extent juries endeavor to relieve a party from the effect of a rule of law, when it contravenes in the given case, their views of what is right and just, and when there is reason to fear that a jury has been thus influenced, it is the duty of the court to protect the party by holding both court and jurors to a rigid compliance with the rules of law.

It is quite possible that a new trial may not change the result already arrived at in this case. We cannot be influenced by any such consideration. The defendant had the right to these instructions, requested, and it was the duty of the court to comply with them. And having refused to do

so the judgment should be reversed and a new trial ordered, costs to abide the event.

The omission to except to the charge has deprived the plaintiff of the benefit of a review of that portion of it in which the jury was instructed that defendant was liable, because he did not put his refusal to deliver the notes on the ground that the plaintiffs had delivered all the chairs. I am not prepared to admit the soundness of the proposition, but as it is not in the case, it is unnecessary to discuss.

Judgment should be reversed and a new trial ordered, costs to abide the event.

Affirmed.