## BARNES *v.* DENSLOW *et al.*

(*Supreme Court, General Term, First Department.* February 14, 1890.)

1. SALE—RIGHTS OF SELLER—WAIVER.
   Plaintiff agreed to sell and deliver to defendants 500,000 sets of box shooks, to be paid for in lots of 25,000. *Held*, that the acceptance by plaintiff of payments on account was not a waiver of his right to insist on the payment of the balance due before completing his contract; nor was his right to payment for each lot of 25,000 waived by his making one or more deliveries without payment.

2. COSTS—EXTRA ALLOWANCE.
   The sole question tried under the rulings of the court was as to the right of plaintiff to recover anything, and the questions as to the counter-claim were not submit-

ted to the jury. *Held*, that their disposition did not constitute such a difficult and extraordinary case as would justify taking them into consideration in measuring the amount of the extra allowance to plaintiff.

**3. APPEAL—HARMLESS ERROR.**
In an action for the balance of the price of the shooks actually delivered, defendants set up a counter-claim for damages sustained by them by reason of the alleged breach of the contract by plaintiff. The jury found that there was no such breach on plaintiff's part. *Held*, that the exclusion of evidence on the question of the amount of defendants' damages, even if erroneous, would not have produced any injury.

Appeal from circuit court, New York county.

Action by Erastus H. Barnes against Walter P. Denslow and Rufus T. Bush. Trial resulted in a verdict for plaintiff. From the judgment entered thereon, and the order granting an extra allowance, defendants appeal.

Argued before VAN BRUNT, P. J., and DANIELS and BARRETT, JJ.

*Van Buren Denslow*, (*Robert G. Ingersoll*, of counsel,) for appellants. *Cudlipp, Graff & Blauvelt*, (*N. B. Hoxie*, of counsel,) for respondent.

VAN BRUNT, P. J. This action was brought to recover for the purchase price of certain merchandise alleged to have been delivered by the plaintiff to the defendants. Upon the trial the jury found a verdict in favor of the plaintiff for $2,584.34, and an extra allowance was granted by the court of $1,000, based upon the defeat of certain counter-claims which had been set up by the defendants in their answer, as well as upon the recovery of the plaintiff. From the judgment thereupon entered these appeals are taken. It appears that about the 15th of April, 1879, the plaintiff and defendants entered into a contract for the sale and delivery of 500,000 sets of box shooks, of a certain description, not less than 1,000 nor more than 3,000 per day. The shooks were to be delivered upon the dock of the defendants in South Brooklyn, and the defendants were to pay for the same 10 cents per set, in lots of 25,000, either in cash or by 30 days' note, as they might desire, from time to time. The delivery was to commence as soon as the defendants' then present contract with one Thompson was completed. On the 16th of July the defendants sent and the plaintiff received a notice requesting him to deliver at the rate of 3,000 sets per day, beginning on the 1st of August. In fact the plaintiff did not begin to deliver until the 19th of August, the first delivery reaching the defendants on August 24th. There were 40,000 sets delivered, in 20 car-loads, between August 25th and September 5th, the deliveries being made on 4 days, at 10,000 per day. On the 2d of September the defendants notified the plaintiff to reduce the rate of delivery to 1,000 sets per day, which the plaintiff says was followed on the 4th of September by a verbal order from the defendants to stop shipment entirely, as they were blocked. On the 11th of October the plaintiff made a demand upon the defendants for payment. He then received $1,500 on account, and he told the defendants that his people were not disposed to go on unless the thing was paid up, and that Mr. Bush, one of the defendants, then said that he did not care if they did kick or throw up the contract, for they could do better. On the 15th of October the defendants sent to the plaintiff a notice that on their contract he might commence to deliver box shooks at the rate of 1,000 sets per day, until further notice. On the 17th or 18th of October the plaintiff had an interview with Bush, who said there would be no more money paid under the contract until the plaintiff made more shipments. It appears at this time that there had been delivered by the plaintiff 40,000 box shooks, and there had been paid by the defendants on account of freight on the box $722.20 and $1,500 in cash; that the first payment which the defendants were bound to make was upon the 25,000 which had been delivered, viz., $2,500; and that there was due, therefore, upon the first 25,000 the sum of $277.80 at this time, which the defendants in no manner offered to pay. The plaintiff wrote a letter to the defendants, stating that,

they having refused to pay for the box shooks delivered according to the terms of the contract, he would be compelled to hold the contract at an end, and no further deliveries were made thereunder.

The defendants, upon their examination, gave some slightly different versions of the conversations between themselves and Barnes with reference to the contract, and stated that they told Mr. Barnes that the reasons for not paying were that they feared that they might not get the shooks they were entitled to under the contract. Also some evidence was given in reference to the quality of the shooks delivered as not being in accordance with the contract, and that the applications for money made on the part of Barnes were not for payments on account of the contract, but for loans of money to help him along in the carrying out of the contract. The defendants also offered evidence upon the question of the damages sustained by them by reason of the breach of the contract, to support the counter-claims which had been set up in their answer. It will be observed, upon the consideration of the evidence, however, that no basis for the submission of the question of damages to the jury under this alleged counter-claim was established. The contract was broken on the 18th of October, if broken at all, and it did not appear what at that time was the market price of the articles in question. One of the witnesses testified, it is true, that to his best recollection these shooks were worth about 13 cents in October, but that he did not know of any sales, and that he only judged of the market price by what they cost; which was clearly incompetent testimony in reference to the question of market price, and no competent evidence whatever on this subject was given upon the part of the defendants. The court thereupon submitted to the jury the question as to which of the parties broke the contract, and if they found that the contract was broken on the part of the defendants by their refusal to pay for the shooks already delivered, and which under their contract they were liable to pay for, then the plaintiff would be entitled to recover.

Various exceptions are presented to the refusal of the court to charge certain requests made upon the part of the defendants. As to the first of these exceptions, it would appear that the court had already charged sufficiently upon that point, so that the jury could clearly understand that a purchaser might retain without compensation the benefit of an imperfect or partial performance of the contract by his vendor, and that under the evidence in this case the question was as to whether the defendants refused to pay moneys due under their contract for goods already delivered, which refusal, if made, would justify the plaintiff in refusing to continue the further delivery. As already stated, the claim is made that there was no demand of payment under the contract made by the plaintiff, but a request for loans of money to enable him to carry on the contract. And the court charged the jury that, if they found that the defendants' version was true, the plaintiff could not recover; but if, on the other hand, they found that he was asking for his money, and the defendants refused to pay, then the plaintiff could recover.

The next request to which our attention is called was a request to charge that if "the jury believe, from the evidence, the defendants were ready at all times to accept all shooks which plaintiff should deliver under the contract, and that, when plaintiff had delivered a sufficient quantity of shooks to call for a payment, a payment was made, which the plaintiff accepted, and if they believe that after such payment was made there was at no time as many as 25,-000 sets of shooks delivered and unpaid for, and that by the terms of the contract no payment could fall due except as that quantity should be delivered and remain unpaid, and that such failure to continue the delivery was no fault of these defendants, they will find for the defendants." This request was certainly properly refused, because it involved the proposition that, where a partial payment which was due under the contract was accepted, the plaintiff thereby waived the right to call for the payment of the balance until the

termination of the contract. Such, clearly, is not the rule. Where a payment had been made on account, the plaintiff had a right to insist upon the payment of the balance which was actually due before going on and completing his contract.

The defendants further requested the court to charge "that a contract whose performance is to be made over a period of time, and on which payment is to be made in installments as performance is made, is so far severable that a failure to pay for one or more deliveries, if the defendants were solvent, unless the action of defendants shows an intent to abandon and rescind the contract, is not such a breach as authorizes the plaintiff to stop in his further performance, or wholly refuse to complete his performance. He is bound to perform his whole contract, and to proceed to collect for his performance, as his performance causes the installments to fall due on the contract." This proposition the court refused to charge, and an exception was duly taken. It is true that our attention has been called to certain English authorities tending to support this proposition. But the rule as laid down in this state is different. *Gardner* v. *Clark*, 21 N. Y. 399. In that case it was held that where a party entered into a contract to deliver articles by the wagon load, and was entitled to pay for each wagon load as delivered, he does not waive that right by making delivery without payment, although he has repeatedly delivered loads without payment, and has given no notice of his intention to insist upon immediate payment thereunder. It would seem, therefore, that the learned court was correct in refusing to submit the proposition as requested to the jury.

It is further urged that the court erred in holding that the case made by the defendants on their counter-claim presented no question which could be submitted to the jury. Whatever might be our opinion upon this question, it is clear that the defendant has sustained no damage thereby, because by their verdict the jury have found that there was no breach of the contract in question upon the part of the plaintiff, and consequently the defendants could not have had any cause of action against the plaintiff because of such breach; and therefore evidence, even if erroneously excluded, on the question of the amount of damages, could not have produced any injury. *Yates* v. *Railroad Co.*, 67 N. Y. 100. The learned counsel for the defendants throughout the whole trial insisted that the defendants would have a right to show, in case there was a breach of contract on the part of the plaintiff, the damages which would result up to the end of the contract. This evidence the court refused to allow, under the authority of *Masterton* v. *Brooklyn*, 7 Hill, 61. It is claimed upon the part of the appellants that this case is not an authority upon the case at bar, because of the different circumstances attending the contracts. But it seems to us that it is clearly established by the principles there laid down that the rights of the parties must be determined as of the time when the contract was broken, and that they could not be extended, according to the existing state of the market, to the time fixed for full performance, but must be confined to the time when the cause of action arose. This rule has been approved by the United States supreme court in the case of *U. S.* v. *Speed*, 8 Wall. 77; and also by our court of appeals in *Story* v. *Railway Co.*, 6 N. Y. 85. Upon the whole case, therefore, it does not appear that any of the exceptions taken are available to the defendants. The question as to the breach of contract being clearly one for the jury, and the jury having found in favor of the plaintiff upon this issue, there have no errors been committed prejudicial to the defendants.

We think, however, that the court was not justified in granting the allowance which it did. The counter-claims upon the part of the defendants were necessarily defeated by the success of the plaintiff, and, under those circumstances, we do not think that in measuring the amount of the allowance the fact of the existence of these counter-claims should have been taken into account. It appears from the evidence that there was a direct issue, as between

the plaintiff and the defendants, as to the right of the plaintiff to recover anything. The sole question which appears to have been tried under the rulings of the court was as to the right of the plaintiff to recover anything. The questions as to the counter-claims were not submitted to the jury, and their disposition, therefore, did not constitute such a difficult and extraordinary case as would justify taking them into consideration in determining what amount of allowance should be granted. We think, therefore, that the allowance should have been limited to the sum of 5 per cent. upon the amount of the verdict, and the judgment should be reduced by the difference between that amount and the sum of $1,000, the amount of the allowance originally granted, and the judgment as thus reduced should be affirmed, without costs.

All concur.