HARRIS LUMBER COMPANY *v.* WHEELER LUMBER COMPANY.

Opinion delivered November 30, 1908.

1.  SALE OF CHATTELS—SEVERABILITY.—When a contract for the sale of
    11 car loads of lumber contemplated that each car load should be
    shipped as fast as the lumber accumulated in the vendor's yard, and
    that each car load should be billed separately, and the purchase price
    for the lumber contained therein should be due sixty days after
    delivery, the contract is severable. (Page 495.)

2.  SAME—BREACH—WAIVER.—A breach of a contract of sale on account
    of the vendee's failure to make payments of purchase money when
    due is waived by the vendor when he accepts payments after they
    are due without insisting on prompt payments. (Page 496.)

3.  SAME—RIGHT OF VENDOR TO RESCIND.—Where a vendee in a contract
    of sale wilfully refused to pay an installment of the purchase money
    when due, the vendor was authorized to rescind the contract. (Page
    496.)

4.  SAME—BREACH OF CONTRACT.—A vendee who is himself in default in
    failing to pay an installment of the purchase money cannot insist
    upon performance by the vendor as a condition precedent to his
    performance. (Page 497.)

Appeal from Sebastian Circuit Court, Fort Smith District;
*Daniel Hon,* Judge; reversed.

STATEMENT BY THE COURT.

This suit was begun by appellant against appellee in a jus-
tice's court for a balance alleged to be due on lumber which ap-
pellant had sold appellee. The amount claimed was $100.
Appellee denied orally that it was indebted to appellant in any
sum, but claimed that appellant was indebted to it on account of
a breach of the contract made between appellant and appellee in
regard to sale of lumber, in the sum of $175.

In a written reply to this oral claim appellant denies that ap-
pellee has been damaged in any sum on account of appellant's
failure to comply with its contract, denies that appellant failed
to comply with its contract, and avers that "whatever delay, if
any, in shipping said lumber was caused by the carelessness of
the roads, the amount and kind of lumber ordered by appellee,
and other conditions over which appellant had no control, and
the fact that appellee refused to pay for the lumber when due."

It appears from the evidence that the contract originated in
this way: Appellee sent to appellant for a list of lumber for

prices. Appellant in reply letter sent a list of lumber, giving kind, dimensions and price, and saying: "We hope that you will be able to favor us with a portion of your business. We can ship you dry stock and ship you promptly." In reply to this letter appellee wrote appellant under date of September 25, 1905, as follows:

"Enclosed find list of eleven cars. Each car numbered and prices attached as per your quotation of 22d inst. Cars No. 1 and 2 we would like you to ship promptly, and the balance one or two cars a week, or along as convenient. We would like to have the whole shipment within ninety days." To this letter was attached the order for the eleven cars. Each car numbered and the number and dimensions of the lumber for each car.

Appellant on same day wrote accepting the order as follows: "We note your letter of the 9-25; also orders. We will accept your orders with the understanding that we are to ship any and all as fast as we accumulate it on the yard. You will note that this is all No. 2, and that it is mostly all eighteen and twenty foot lengths, which makes it bad on us. If all right, we can load you up several cars soon, and we will check each of them off as we load it, and will not load any more than your order calls for. Please answer."

The appellee on the 26th of September, 1905, replied as follows: "You may let the stuff come. But check items as loaded, and do not ship more than the order calls for of any one item. Trusting that this will be satisfactory, we are, etc."

On the next day appellant answered as follows: "We note your letter of the 9-26. Will go to work on your order at once."

The above constituted the contract between the parties as to the sale of the lumber. It is not shown by the correspondence when the lumber was to be paid for, but the uncontradicted evidence was that the bill for a car load of lumber would be due sixty days after the car was shipped, that those were the regular terms for lumber sold on time, and that the lumber was sold to appellee on the regular terms. Appellant began the shipment of lumber on October 10, 1905, and continued to ship until February 6, 1906, when the last car was shipped. It shipped eight cars. Appellant testified and appellee admitted that the sum of $100 was due on the lumber that had been shipped under the con-

tract, but appellee contended that it was the duty of appellant to have shipped eleven cars under the contract, and that the lumber which it failed to ship was worth $175 more at the time it refused to ship same than the contract price at which appellee purchased same of appellant. There was no shipment of lumber from December 9, 1905, till February 6, 1906. In the mean time the correspondence shows that appellee was complaining of the delay and urging appellant to make more prompt shipments, and appellant in reply (February 12, 1906) made excuses for the delay and promised to send the balance of the order "as soon as possible." On March 3, 1906, appellant advised appellee by letter that the former had drawn on the latter for $722.59 the amount of its account past due. Appellee in answer sent a remittance for $250. Appellant in a letter of March 7th acknowledged receipt of remittance and said: "Hope you will not delay sending balance due." On March 21, 1906, appellee wrote appellant as follows: "We are still waiting patiently for balance of our order. If you only knew how badly we need stuff, you would appreciate our hurry. We will let you have another check in a few days." In answer to this appellant wrote: "We note your letter of 3-20" (evidently meaning 3-21.) "If this kind of weather continues, we will soon be able to get some lumber hauled in from the woods, but before we ship you any more we must know about this pay, as part of your account is past due, and we need this money to run our business, and we can sell our lumber to men who will pay promptly."

On April 4th appellee wrote appellant as follows: "Enclosed find check for $313.13, the amount of our account less $100, Expense bill for $50.13 also enclosed. We notice by your last letter that you can sell your lumber to people who pay promptly. We feel that we have been as prompt in our remittances as you have in your deliveries. You accepted our order September 25-05, which is more than six months ago. It will be just as convenient for us for you to ship with draft, invoice and bill of lading attached, as regular terms, provided that on the last car or our order you include the draft for the $100 which we are holding up. We would appreciate an early delivery of this order as by agreement, and, in order to satisfy you, to be paid for as before stated, *i. e.*, cash on delivery. If you had delivered

this stuff promptly, we have been in position constantly to comply with our letter of March 2, 1906."

Appellant's witness testified that appellee was constantly behind with its payments, and that the reason the two cars were not shipped was because he "felt like they would not pay us for it." On the other hand, appellee's witness testified that "he kept the bills paid promptly until he (appellant) quit shipping," that the money was held in order to force shipment. There was evidence on behalf of appellee tending to show that appellant failed to ship 42,342 feet of lumber contracted for, and that the difference between the contract price and market price when it should have been delivered was approximately five dollars per thousand. On the other hand, the evidence of appellant tended to show that the advance in the price of lumber, such as composed the order here, amounted to only fifty cents per thousand, and that it would not exceed the sum of $8.00 per car. The court among others gave the following instructions:

"1. If the jury believe that the plaintiff agreed to furnish to the defendant one entire lot of lumber, and has failed or refused to furnish a part of same, it is not entitled to recover in this action.

"2. If the plaintiff has failed to ship to defendant all the lumber it contracted to ship to it, defendant would be entitled to recover from plaintiff the difference between contract price of the lumber and the market value of same at the time it should have been shipped, if that be greater than the contract price."

The court refused to give, among others, the following prayers:

"1. If you find from the evidence that the Wheeler Lumber Company is indebted to the plaintiff, Harris Lumber Company, for lumber, then your verdict must be for the plaintiff for such sum as you believe from the evidence is still due on said lumber.

"2. If you believe from the evidence that the defendant, Wheeler Lumber Company, failed or refused to pay for said lumber, or any part thereof, when same fell due, then the plaintiff was not required to continue to furnish lumber to defendant while any part of the account was due and unpaid.

"A. If you believe from the evidence that plaintiff delivered

to this defendant the lumber as fast as it accumulated on its yards, then your verdict must be for the plaintiff."

To these rulings exceptions were properly saved. The verdict and judgment were for appellee in the sum of $25, and this appeal is duly prosecuted.

*Brizzolara & Fitzhugh,* for appellant.

It is clearly shown by the evidence that the lumber was to be shipped and paid for in installments as delivered. The contract was therefore severable, and there could be a breach for non-payment before complete delivery. 137 N. Y. 471; 148 N. Y. 81; 104 Mich. 242; 110 Pa. St. 236; 7 Words & Phrases, 6454. Where the contract calls for delivery of goods in installments, and payment therefor as delivered, the seller may refuse to deliver subsequent installments until prior installments have been paid for, and, if payment is refused, he may rescind the contract. 24 Am. & Eng. Enc. of Law (2 Ed.), 1096; 117 Mass. 6; 44 Ill. 339; 115 U. S. 188; 113 Fed. 256; Tiedeman on Sales, 210; 98 S. W. 34; 43 Am. Dec. (Century Ed.), c. 423; 81 N. E. 574; 149 Ill. 138; Bishop on Contracts, 613.

Appellees were not authorized to withhold the hundred dollars due on prior installments of lumber received and accepted. 110 Pa. St. 242; 51 Atl. 305; 78 N. E. 414.

*Winchester & Martin,* for appellee.

The contract was admitted as pleaded, and the proof is conclusive that appellant did not comply with it. The only contested issue, therefore, was whether or not appellee was damaged by reason of appellant's breach of contract. Testimony that is not responsive to the issues may properly be eliminated by the charge of the court to the jury. 67 Ark. 147; 41 Ark. 393; 77 Ark. 237; 74 Ark. 468; 63 Ark. 108. If appellant desired to rely on issues raised in its brief, not having raised them in its pleadings, it should have presented them in instructions to the jury. 67 Ark. 416; 69 Ark. 632; 75 Ark. 76; *Id.* 381.

WOOD, J., (after stating the facts.) The contract under consideration was severable, and the court erred in not so treating it. Although the contract called for the shipment of eleven car loads of lumber, yet the undisputed evidence is that it was to be shipped from time to time in car lots, and each car load was to

be billed separately and the amount of purchase price for the lumber contained in each car was due and to be paid sixty days after delivery. Where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed, although the whole is in its nature single and entire, the contract is severable. 2 Parsons, Cont. 577; *Rugg* v. *Moore,* 100 Pa. St., 236; *Dowley* v. *Schiffer,* 13 N. Y. Supp. 552, 553. In *Williams* v. *Robb,* 104 Mich. 242, it is held (quoting syllabus) : "a contract for the shipment of fifteen car loads of potatoes, while entire in the sense that either party has a right to full performance, is severable where it clearly appears that the shipments were to be made in car lots to be paid for as received." The contract in this case was entire in the sense that, if appellee had complied with its terms as to payment, it could then have compelled appellant to ship it the balance of the lumber, or else have responded in damages for its failure to do so. But here the uncontroverted proof shows that appellee was guilty of the first breach of the contract. For its letter of April 4th shows that it held back the sum of one hundred dollars that was due appellant, and appellee's own evidence shows that this amount "was held back in order to force appellant to make shipment." True, appellee contends that appellant, in its course of dealing, by allowing appellee to make payments and in receiving same after they were due, and in not insisting on prompt payment of the amounts as they became due, waived any breach, if any, of the contract on appellee's part in that respect. This would certainly be correct up to the time when appellant definitely notified appellee that it must comply with the contract in making payments, and that it was required to pay the past due indebtedness on shipments before appellant would ship any more lumber. Such notice appellant gave appellee March 20, 1906, in a letter of that date, and it was after this that appellee "held back" the one hundred dollars past due "to force appellant to make shipment." Appellee could not do that. Appellant claimed (and really there is no evidence to the contrary) that it had performed its contract and had shipped the lumber to appellee "as fast as it had been able to accumulate it on its yard." If appellant had not performed its contract in shipping the lumber as promptly as the contract required and refused to ship any more lumber under it, appellee could have

abandoned same and sued for damges for the breach, but appellee could not stand on the contract and insist on further shipments of lumber when it was in default in making payments that were past due under it, at least without tendering those payments. Mr. Tiedeman says: "If the breach of condition of part payment is the result of accident or oversight, or is attendant by other facts and circumstances which are inconsistent with an intention to abandon the contract, and which incline one to presume that the buyer intended to fully perform the contract, then the failure to pay an installment at the agreed time does not work a forfeiture of the whole contract, but by tender of the future installments of payments he may claim the benefits of the sale. But if the acts of the buyer in failing to make the payment of an installment indicate his intention to abandon the contract, as where the refusal to pay is willful, and not through a misunderstanding or accident, the entire contract is held to be forfeited, and the seller can not thereafter be compelled to perform the contract." Tiedeman on Sales, § 210.

Here the failure to pay the one hundred dollars, admitted by appellee to be past due, was not accidental but intentional, as shown by appellee's own evidence. There was no tender to appellant of the past due payment, but an intentional withholding of same to compel the other party to perform. A party, who is himself in default, without any offer to repair such default, can not insist on performance by the other party as a condition precedent to his performance. *Spencer Medicine Co.* v. *Hall*, 78 Ark. 336; *Lee* v. *N. H. Ry. Co.*, 15 Fed. Cas. 214; *Porter* v. *Arrowhead Reservoir Co.*, 100 Cal. 504; *San Francisco Bridge Co.* v. *Dumbarton Co.*, 119 Cal. 275; *McGrath* v. *Gegner*, 77 Md. 331; *Dunham* v. *Mann*, 4 Seld. 512; *Curtis* v. *Gibney*, 59 Md. 131; *Haines* v. *Tucker*, 50 N. H. 307; *King Phillip Mills* v. *Slater*, 12 R. I. 82; *Guerdon* v. *Corbett*, 87 Ill. 273; *Wilson* v. *Bauman*, 80 Ill. 494; *Winchell* v. *Scott*, 114 N. Y. 640; *Flaherty* v. *Miner*, 123 N. Y. 382, 389; *Mead* v. *Degolyer*, 16 Wend. 638; *Ladue* v. *Seymour*, 24 Wend. 60, 62; *Jones* v. *Judd*, 4 N. Y. 411; *Kokomo Strawboard Co.* v. *Inman*, 134 N. Y. 92; *Pattridge* v. *Gildmeister*, 1 Keyes, 93; *Barnes* v. *Denslow*, 9 N. Y. Supp. 53.

In *Rugg* v. *Moore*, 110 Pa. St. 242, where the facts are similar, the court said: "He paid the first (draft) and refused to

pay the second, because he wanted to see whether the defendants had shipped or would ship all the corn. This was not a sufficient reason for refusing to pay after he had accepted and received the corn. If, then, the contract required payments on deliveries, and the plaintiff wilfully refused payment, according to the contract, he thereby authorized defendants to rescind at their option." See also *Nichols* v. *Scranton Steel Co.,* 137 N. Y. 471, and other authorities to this point cited in appellants briefs. *King* v. *Faist,* 161 Mass. 449.

The court erred in giving instructions numbered one and two and in refusing prayers numbered one and two asked by appellant.

We do not concur in the view expressed by counsel for appellee that the contention of counsel for appellant here is not responsive to the issues raised below. The appellant alleged a compliance with the contract on its part, and the sum of $100 due on the part of appellee in not making payment, and asks judgment for the amount of that payment, which appellee admits was due on the lumber that had been shipped.

The judgment is reversed, and judgment is entered here for appellant for the sum of $100.

ON REHEARING.

Opinion delivered January 11, 1909.

WOOD, J. It is true, as appellee contends, that the one hundred dollars which in its letter of April 4th, it stated it was "holding up" was not due until two days thereafter (April 6th). But the letter shows that appellee treated it as if it were due when it was writing the letter, and we so treated it. The letter is set out in the statement, and it clearly shows that appellee did not intend to send that one hundred dollars (which it then knew would be due in two days) until appellant had shipped the last car. For the letter expressly states: "It will be just as convenient for us for you to ship with draft, invoice and bill of lading attached as regular terms, provided *that on the last car of our order you include the draft for $100 which we are holding up."* This letter was in answer to appellant's letter saying: "Before we ship any more lumber we must know about this pay." Appellant had the

right to make that inquiry and that demand, for at that time appellee owed appellant $313.13 past due. The answer to this inquiry and demand (letter of April 4th *supra*) shows, as we have endeavored to make clear, that appellee intended to withhold that amount, even after it was due under the contract, to "force appellant to make shipment." This appellee could not do without breaching the contract. Notifying appellant of that fact in advance absolved it from further effort to carry out the contract on its part.

We believe our first conclusion therefore is correct, and the motion for rehearing is overruled.