## C. L. Smith v. Ellen H. Preston, Exec., etc., et al.

1. OPTION CONTRACTS—*What Are.*—A contract to give another the option to sell or buy any commodity at a future time is an option contract and void.

2. SAME—*What is Not a Gambling Contract.*—The court states the contract in this case and holds that it is not within the prohibition of Section 130 of the Criminal Code.

3. STATUTES—*Rule of Interpretation.*—A thing within the intention is within the statute, though not within the letter, and a thing within the letter is not within the statute unless within the intention.

4. ADMINISTRATION OF ESTATES—*Presentation of Claims Against.*— Sec. 70. Chap. 3, R. S., entitled "Administration of Estates," providing for the presentation of claims within two years from the granting of letters testamentary or of administration, is not a general statute of limitations taking away all remedy, but a specific act adopted for the particular purpose of facilitating the early settlement of estates.

5. SAME—*Construction of Sec. 70, Chap. 3, R. S. "Limitations."*— A claim against the estate of a deceased person is not absolutely barred if not presented within two years, but simply the right to claim a distributive share in, or any partition out of, the property already inventoried.

6. SAME—*Claims Presented after the Expiration of Two Years.*— Under proper pleadings a plaintiff has a right to have a claim against the estate of a deceased person not presented until after the expiration of two years from the granting of letters, passed on by the court, and a judgment for the amount due, if anything. to be satisfied out of any estate that may afterward be found not inventoried or accounted for by the administrator.

7. SAME—*Effect of Pleading the Two Years Limitation.*—If the defendant be successful on the plea of the two years statute, the court

in the event of a recovery by the plaintiff, will give judgment payable out of subsequently discovered estate not inventoried or accounted for by the administrator or executor, as the case may be.

Assumpsit, for breach of written contract. Trial in the Superior Court of Cook County, the Hon. SAMUEL C. STOUGH, Judge, presiding. Judgment for defendant; appeal by plaintiff. Heard in this court at the October term, 1898. Reversed and remanded. Opinion filed April 17, 1899.

McGLASSON & BEITLER, and JAMES R. WARD, attorneys for appellant, contended that the contract in question is not within the prohibition of Sec. 130 of the Criminal Code. What the law prohibits, and what is deemed detrimental to the public, is the speculation in differences in market values, called, in the peculiar language of the dealers, "puts and calls," which simply means a privilege to deliver or receive the grain or not, at the seller's or buyer's option. It is against such fictitious, gambling transactions, we apprehend the penalties of the law were aimed. Wolcott v. Heath, 78 Ill. 437.

"The intention of the parties gives character to the transaction, and if either party contracted in good faith, he is entitled to the benefit of his contract, no matter what may have been the secret intention or purpose of the other party." Pixley v. Boynton, 79 Ill. 353.

Optional contracts, in this sense, are usually made by adjusting market values as the parties having the option may elect. It is simply a mode adopted for speculating in differences in the market value of grain and other commodities; it must have been in this sense the term option is used in the statute. Such a contract is fictitious, having none of the elements of good faith, as in a contract where both parties are bound. And, referring to the option in that case, the court said : " They contracted for the privilege of dealing in options, and settled with them on the differences as indicated or determined by the fluctuations of the market." Pearce v. Foot, 113 Ill. 234.

The actual intention of the parties is what the law requires shall be ascertained, and inasmuch as Section 130, Chapter 38, of the Criminal Code, is a highly penal statute,

Smith v. Preston.

the intention of the parties to violate it must be clearly established before there can be an adjudication, either in a civil or a criminal proceeding, visiting the penalties of that statute upon the parties, and casting upon them the legal consequences of a violation of its provisions. People v. Fesler, 145 Ill. 155.

Flower, Smith & Musgrave, attorneys for appellees.

The portion of the agreement under which recovery is sought in the first three counts is an option contract and void. Rev. Stat., Chap. 38, Sec. 130; Corcoran v. Coal Company, 37 Ill. App. 577, 138 Ill. 390; Schneider v. Turner, 27 Ill. App. 220, 130 Ill. 28; Kerting v. Hilton, 51 Ill. App. 437, 152 Ill. 658; Locke v. Towler, 41 Ill. App. 66; Champion v. Smith, 46 Ill. App. 501.

The first three counts are bad because they allege breaches of obligations not limited to Preston's lifetime, and which were terminated by his death. Preston v. Smith, 67 Ill. App. 613, 170 Ill. 179.

There was no error in overruling the demurrer of the plaintiff to the defendant's plea to the fourth amended count, and in dismissing the suit. Judy v. Kelley, 11 Ill. 211; Ryan v. Jones, 15 Ill. 1; Darling v. McDonald, 101 Ill. 370.

Mr. Justice Adams delivered the opinion of the court.

This was an action of assumpsit by appellant against Ellen H. Preston, executrix, and John L. Preston and Alfred R. Edwards, executors of the estate of E. B. Preston, deceased, upon certain clauses of the following contract:

"This agreement entered into between C. L. Smith, of Cleveland, Ohio, and E. B. Preston & Co., of Chicago, Illinois.

From the date above mentioned, the said C. L. Smith agrees to give said E. B. Preston & Co. the exclusive right of manufacturing and selling a certain improved hose attachment and swivel, patented August 20, 1889, patent No. 409,512, and that he has not disposed of any right, or portion of right, to any other person previous to this agreement.

E. B. Preston agrees to furnish C. L. Smith with what his wants may be of this hose attachment, of any size manufactured, at a margin of twenty per cent above cost. Said cost to be agreed upon, and he shall retain the right to sell these goods at market price agreed upon between him and said E. B. Preston & Co.

It is mutually agreed that E. B. Preston & Co. shall push the sale of this swivel by advertising, exhibiting, and soliciting trade by their traveling salesmen, or by other employes; shall keep at all times in stock such quantities as will supply the market for demand, and to use their best efforts to create a large demand and heavy sale of this article.

Said E. B. Preston & Co. further agree that the royalty paid to said C. L. Smith shall equal at least four hundred and fifty dollars ($450) per annum. In case they do not reach this amount, this agreement can be canceled by C. L. Smith, and a new one made that will be satisfactory to him.

The said E. B. Preston & Co. further agree to pay C. L. Smith on or before the 15th of each month following the sales of said hydrant-swivel, a royalty of fifty cents per dozen on all three-fourth hydrant-swivels sold. If any larger size be manufactured hereafter, a price in royalty will be made that will be satisfactory.

Said E. B. Preston & Co. will furnish said C. L. Smith with statements of sales of this swivel, with sales of each size, and E. B. Preston & Co.'s books shall be open to C. L. Smith at any and all times covering sales of this swivel.

Signed this 11th day of September, 1891.

E. B. PRESTON & Co.,<br>By C. E. Jenkins, Mgr.<br>C. L. SMITH."

The declaration contains four counts. The first, second and third counts are based upon breaches of the following paragraph of the contract:

"E. B. Preston agrees to furnish C. L. Smith with what his wants may be of this hose attachment, of any size manufactured, at a margin of twenty per cent above cost; said cost to be agreed upon, and he shall retain the right to sell these goods at the market price agreed upon between him and the said E. B. Preston."

The fourth count is based upon breaches of the following paragraph of the contract:

" It is mutually agreed that E. B. Preston & Co. shall further the sale of this swivel, by advertisement, soliciting trade by their traveling salesmen, or other employes, and shall keep at all times in stock such quantities as will supply the market for demand, and to use their best endeavors to create a large demand and a heavy sale of this article."

It is averred in each of the counts that E. B. Preston conducted business at Chicago, Illinois, under the firm name and style of E. B. Preston & Co.; that said firm consisted solely of E. B. Preston; that E. B. Preston and appellant executed the contract September 11, 1891; and in the first, second and third counts, that appellant and E. B. Preston, on September 11, 1891, agreed upon the cost price of said hose attachment and swivel, and fixed the rate at $2 per dozen, and the price at which appellant had the right to sell the same at $3.50 per dozen, and that the demands of appellant in transacting his business required 9,000 dozen during the unexpired term of said patent, to wit, fifteen years, or 600 dozen per year for the period of fifteen years, and that E. B. Preston agreed to sell and deliver said quantity of hose attachments to appellant upon demand, for $2.40 per dozen, to be paid for upon delivery, but refused and neglected to do so.

In the fourth count, it is averred that E. B. Preston failed and neglected to push the sale of said swivel by advertising, exhibiting, and soliciting trade by his salesmen and other employes, and to keep at all times in stock such quantity as would supply the market for demand, and failed and neglected to use his best efforts to create a heavy sale of said swivel, whereby the appellant, being owner of said patent, subject to said agreement, and having a large business, and relying upon the faithful performance of said contract by said Preston, was deprived of great gains and profits.

It is averred in the declaration that E. B. Preston died testate, April 27, 1895, and that letters testamentary were issued May 8, 1895, to appellees.

The breach alleged in the first count is, that E. B. Preston, in violation of his agreement, refused to sell and deliver to appellant for the sum of $2.40 per dozen, 9,000

dozen hose attachments after the date of said agreement, upon demand, and at the places specified by appellant, to be paid for upon delivery.

The breach alleged in the second count is, that E. B. Preston, in violation of his agreement, refused to sell and deliver to appellant for the sum of $2.40 per dozen, 600 dozen hose attachments per year, during the life of a certain patent, to wit, fifteen years from the date of said agreement, to be paid for upon delivery.

The breach alleged in the third count is, that E. B. Preston, on the 10th day of November, 1894, wrongfully refused to carry out his agreement, and refused to sell and deliver to appellant 9,000 dozen of hose attachments for $2.40 per dozen, on demand, at the places designated by him.

The breach alleged in the fourth count is, that E. B. Preston, after September 11, 1891, wrongfully failed and neglected to push the sale of said swivels, by advertising and soliciting trade by his salesmen and other employes, and to keep at all times in stock such quantities as would supply the market for demand, and neglected to use his best efforts to create a large demand and heavy sale of said articles, whereby appellant, being the owner of said patent subject to said agreement, was deprived of large gains and profits.

Counsel for appellees resorted to the ancient and obsolete method of demurring *ore tenus* to each of the first three counts, which seems to have been by consent, as no objection on that ground is made by appellant's counsel. Inasmuch as we are not informed by the record what counsel said in so demurring, we must, in accordance with a well settled rule, assume, as against appellees, that the demurrer was general. The demurrer to the first three counts was sustained by the court, and appellant elected to stand by his demurrer.

Appellees pleaded to the fourth count. Appellant demurred to the plea generally and specially; the court overruled his demurrer, he elected to stand by it, and judgment was rendered for appellees.

The questions for decision are whether the court erred in sustaining appellees' demurrer to the first, second and third counts, and in overruling appellant's demurrer to appellees' plea to the fourth count.

The chief point relied on by appellees in support of their demurrer to the first three counts of the declaration is, that the part of the contract relied on in those counts, viz., that in which Preston agreed to furnish appellant with what his wants might be of the hose attachment, is "a pure option contract." In Smith v. Preston, 170 Ill. 179, the court, commenting on the contract in question, say: "The contract is not severable. All its parts must be construed together." We think it obvious that the part of the contract on which the first three counts are based can not be regarded a distinct and independent contract. By the contract, appellant granted to E. B. Preston, under the name of E. B. Preston & Co., the exclusive right to manufacture and sell the patented hose attachment and swivel, and Preston agreed, among other things, to furnish appellant with what his wants might be of the hose attachment and swivel, of any size manufactured, at a margin of twenty per cent above cost. This agreement of Preston was part of the consideration for the grant to him by appellant, in the absence of which, doubtless, the grant would not have been made, because it is clear from the contract that Smith, himself, intended to engage in the business of selling the patented article. In this respect the contract is analogous to the one in question in Wolf v. National Bank of Illinois, 178 Ill. 85. In that case Wolf refused to purchase certain bonds unless the bank would contract in writing to repurchase them. The bonds were sold to Wolf at different times between June 22, 1896, and July 15, 1896, both dates inclusive, and at the date of each sale of bonds the bank gave to Wolf a writing, signed by its vice-president, stating in substance that if he, Wolf, wished to sell the bonds back to the bank in the month of January, 1897, the bank would pay for them par and interest. The case was certainly as strong, and, as we think, a stronger one for the bank, in support of the propo-

sition that the contract, in so far as it related to the resale
to the bank, was an option contract, than is the present case
in support of the proposition that the clause in question of
the contract between appellant and Preston is an option
contract. Yet the court held that on Wolf offering, in Jan-
uary, 1897, to resell the bonds to the bank at their face
value and accrued interest, the bank was bound to purchase
them.

By the agreement, Preston was to furnish the hose at-
tachment to appellant at twenty per cent above cost, and
the agreement contains the following: " Said cost to be
agreed upon, and he shall retain the right to sell these goods
at market price agreed upon between him and said E. B.
Preston & Co." In each of the first three counts of the
declaration it is averred that at the date of the contract it
was agreed between appellant and E. B. Preston & Co. that
the cost price of the hose attachment and swivel would be
$2 per dozen, and the market price $3.50 per dozen. This
is a material averment, and is admitted by the demurrer,
and must be assumed to be true.

We are of opinion, both on the authority of Wolf v. Na-
tional Bank of Illinois, *supra*, and also independently of
that case, that appellant, by his contract, and by agreeing
on the cost of manufacture and the market price at which
the manufactured article should be sold, bound himself to
purchase from Preston as much of the hose attachment and
swivel as his business wants would require, and that Pres-
ton was bound by the contract to furnish the same. Ap-
pellees' counsel rely, in support of their contention, on Sec-
tion 130 of the Criminal Code which, in so far as it is
applicable to the present case, is as follows:

" Whoever contracts to have or give to himself or another
the option to sell or buy, at a future time, any grain or
other commodity  *  *  *  shall be fined  *  *  *  and
all contracts made in violation of this section shall be con-
sidered gambling contracts, and shall be void."

It is a settled rule, in the interpretation of statutes, that
" A thing within the intention is within the statute, though

not within the letter, and a thing within the letter is not within the statute unless within the intention." Perry County v. Jefferson County, 94 Ill. 220; R. R. Co. v. The People, 154 Ib. 568.

In Schneider v. Turner, 130 Ill. 28, a leading case on the subject, the court say of the section:

"We agree fully with counsel for appellants as to the object of the statute. It manifestly is to break down the pernicious practice of gambling on the market prices of grain and other commodities."

The commodity which is the subject-matter of the contract under consideration is a patented article; the exclusive right to manufacture and sell it is granted by appellant to Preston, except the right of sale reserved to appellant, and Preston agrees to furnish to appellant at an agreed price as much as appellant's business wants may require, and no more. We can not perceive, and counsel for appellees have not suggested how appellant could, in any way, use the contract as a means of gambling. It is not like an option to purchase stocks, bonds, or other securities, or any commodity which the parties might settle by paying differences in market prices. Appellant could purchase no more, at the price agreed on, nor was Preston bound to sell him any more, than his wants required, and, so far as appears, there was no market price for the commodity except that fixed by the parties to the contract.

Appellee's counsel urge that the agreement is to furnish appellant with what his wants may be of the hose attachment; that it has no reference to any business requirements of appellant, and that there is no allegation in the declaration that Preston knew appellant was in business, or that he was in fact in business.

In Minnesota Lumber Co. v. Coal Co., 160 Ill. 85, the contract between the parties commenced thus: "The said Minnesota Lumber Company agrees to buy its requirements of anthracite coal for the season of 1886–1887, upon condition named hereafter, of said Whitebreast Coal Company," etc. It was contended that the contract was want-

ing in certainty and mutuality; but the court said: "The circumstances which both parties had in view at the time of making the contract may be referred to for the purpose of determining the meaning of doubtful expressions," and held that the word "requirements," as used in the contract, evidently meant the amount or quantity of coal which the lumber company would need in its business for the specified season. The words "what his wants may be," in the contract in question, are equivalent to the words, "his requirements," and it is evident, from the contract, that what the parties had in view, was that appellant should be furnished with as much of the hose attachment as his business of selling the same in the market would require. That appellant intended to engage in the sale of the hose attachment is sufficiently disclosed by the contract, which is set out in each of the first, second and third counts, and must, therefore, have been known to appellees.

Appellees' counsel further object to the second count on the alleged ground that it seeks to charge the executors, and to the first and third counts, "because they do not confine the wants and requirements of the plaintiff and the obligations of Preston to manufacture and deliver, and the damages resulting, to the lifetime of Preston." The second count contains no averment seeking to charge appellees; it merely avers a demand on them. The first and third counts, by necessary implication at least, aver obligations and claim damages extending beyond the lifetime of Preston, which are not recoverable. Smith v. Preston, 170 Ill. 179.

The demand on appellees and the averments referred to, may be regarded as surplusage, and *utile per inutile non vitiatur*. Besides, surplusage can not be reached by demurrer. 1 Chitty's Pl., 9th Am. Ed., 229.

The plea of appellees to the fourth count commences thus:

"And the defendant, by Flower, Smith & Musgrave, their attorneys, come and defend the wrong and injury, when, etc., and say that the plaintiff ought not, by reason of anything in the additional count filed herein April

19, 1898, to have his aforesaid action against them, because," etc.

The plea, then, goes on to aver, in substance, that E. B. Preston died April 27, 1895; that letters testamentary were issued to the appellees May 8, 1895; that due notice of the time for filing and adjusting claim was given; that, prior to December 24, 1895, appellant presented his claim for royalty under the contract in question, and that such proceedings were had (stating them in detail) that, finally, his claim, to the amount of $207.91, was adjudged to be paid in due course of administration, and that no other claim was ever filed or exhibited against Preston's estate, and no suit was ever begun by him against appellees, except the present one. The plea thus concludes:

"And the defendants aver that, by reason of the premises, the cause of action in said additional count last named is barred by the statute of limitations in such case made and provided. And this the defendants are ready to verify; wherefore, they pray judgment," etc.

Appellant demurred generally and specially to this plea.

The statute relied on by appellees in their plea is Section 70 of Chapter 3, Rev. Stat., which provides: "All demands not exhibited, as aforesaid" (meaning within two years from the granting of letters testamentary or of administration) "shall be forever barred, unless the creditors shall find other estate of the deceased, not inventoried or accounted for by the executor or administrator, in which case their claims shall be paid *pro rata* out of such subsequently discovered estate," etc. This clause quoted is the same as in Section 115 of the former Statute of Wills, Rev. Stat., 1845, p. 561, and has been construed by the Supreme Court in numerous cases: Thorn v. Watson, 5 Gilm. 26; Judy et al. v. Kelly, 11 Ill. 211; Russell v. Hubbard, 59 Ib. 335; Shepard v. Nat. Bank, 67 Ib. 292; Darling v. McDonald, 101 Ib. 370; Snydacker v. Swan, 154 Ib. 220; Waughop v. Bartlett, 165 Ib. 124.

In Waughop v. Bartlett the court say:

"The section of the statute relating to the presentation of claims against the estate of a deceased person, is not a

general statute of limitations taking away all remedy, both personal and against the property of a person deceased. It is a specific act adopted for the particular purpose of facilitating the early settlement of estates. · This court said in Peacock v. Haven, 22 Ill. 23: ' As we understand that section, and as it has been construed by this court, and its plain language seems to import, a claim is not barred if not presented within two years, but simply the right to claim a distributive share in, or any partition out of, the property actually inventoried.' "

In Peacock v. Haven, *supra*, the precise question was whether the claim was absolutely barred by the statute, and the court held that it was not, and the judgment was reversed for the reason that the trial court held a replication, which set up the statute as a bar to a plea of set-off, good.

There is evidently a mistake in the report of the opinion. The court is made to say: " By sustaining the demurrer, the court decided it was an absolute bar, and in this erred." For the word "demurrer" should be substituted replication, because the trial court sustained the replication, as the report shows, and it was the replication which pleaded the statute in bar.

The plea is in bar to the action, and therefore bad. Appellees object that it was incumbent on appellant, either to allege in his fourth count, or reply to the plea of appellees, subsequently discovered assets. The plea being bad, appellant properly demurred to it, and it was not necessary for appellant to aver subsequently discovered assets in his declaration, for the reason that, on proof of his claim, he will be entitled to judgment, even though assets may never be discovered beyond those inventoried.

In Thorn v. Watson, *supra*, the court say :

" Under the issues of *non-assumpsit* and set-off, the plaintiff had the right to have his claim passed on by the court, and a judgment presently for the amount due, if anything, to be satisfied out of any estate that might *afterwards* be found not inventoried or accounted for by the administrator."

The only effect of a plea of section 70 of the statute is,

that if the defendants be successful on the plea, the court, in the event of a recovery by the plaintiff, will not give judgment to be paid in due course of administration, but only judgment payable out of subsequently discovered estate not inventoried or accounted for by the administrator, or executor, as the case may be. R. S., Ch. 3, Sec. 70; Darling v. McDonald, *supra*, 374.

We do not agree with counsel for appellant, that a plea of section 70 of the statute is improper. It is proper when necessary, but not in bar of the action. A proper conclusion of such a plea will be found in Snydacker v. Swan, 154 Ill. 220. It is not apparent in the present case, that the plea was necessary. The date of the issuance of letters testamentary is stated in the count pleaded to; the filing indorsement shows when the count was filed, and inspection and comparison of it with the first three counts will enable the court to determine whether it states a different cause of action from any stated in those counts. It would seem to be sufficient to call the attention of the court to the record.

It was error to sustain appellees' demurrer to the first three counts and to overrule appellant's demurrer to appellees' plea. The judgment will be reversed and the cause remanded.