C. L. SMITH

*v.*

THE ESTATE OF EVERETT B. PRESTON.

*Opinion filed November 8, 1897—Rehearing denied December 14, 1897.*

1. FORMER CASES—*Preston v. Smith, 156 Ill. 359, explained.* Expressions used in the opinion in *Preston v. Smith*, 156 Ill. 359,—a case which arose out of the same contract involved in this case,—are explained by the court, and the decision in that case is held not to bar the defense interposed to this action.

2. CONTRACTS—*when contract to manufacture and sell patented article is not a sale of the patent.* A contract to manufacture and sell a patented article, which provides for the payment of certain royalties to the patentee and guarantees a specified sum annually, is not an absolute sale of the patent, where the patentee expressly reserves the right to cancel the contract and sell the article covered by the patent himself.

3. SAME—*strictly personal contracts terminate by death of party whose personal service is required.* A contract of a strictly personal nature terminates upon the death of the party by whom the personal service is to be performed, and his personal representatives are not liable for its performance.

4. SAME—*whether contract is personal depends upon intention of the parties.* Whether a contract is strictly personal in its nature is a question calling for a construction of the contract, and depends upon the intention of the parties.

5. SAME—*contract with individual as a "firm"—effect upon its personal character.* The fact that a contract is entered into by one party under the name and style of a firm does not affect its personal character, where the other party knows that he is contracting with an individual and not with a firm.

6. SAME—*when contract is strictly personal.* A contract by which a party agrees to manufacture a patented article, and "push the sale" thereof "by advertising, exhibiting and soliciting trade" by salesmen and other employees, and to use his "best efforts to create a large demand and heavy sale," etc., is a contract of a strictly personal nature.

7. EXECUTORS AND ADMINISTRATORS—*executor cannot continue testator's business unless authorized by will.* An executor cannot continue the business of his testator unless it clearly appears from the will that such was the testator's intention.

*Preston v. Smith,* 67 Ill. App. 613, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is an appeal from the Appellate Court for the First District modifying a judgment of the circuit court of Cook county, in which circuit court the case was heard on appeal from the probate court. The appellant herein, C. L. Smith, filed his claim in the probate court of Cook county against the estate of Everett B. Preston for the sum of $6820.10, and on a trial was allowed $207.91 as a claim of the seventh class. The claimant appealed to the circuit court, where, upon a trial before the court without a jury, he obtained judgment for $4335. The executors appealed to the Appellate Court, and there secured a modification of the judgment, reducing it to the same amount allowed by the probate court—$207.91.

Appellant's claim is based on the following contract:

"CHICAGO, ILL., *Sept. 11, 1891.*

"This agreement entered into between C. L. Smith, of Cleveland, Ohio, and E. B. Preston & Co., of Chicago, Illinois. From the date above mentioned the said C. L. Smith agrees to give E. B. Preston & Co. the exclusive right of ·manufacturing and selling a certain improved hose attachment and swivel, patented August 20, 1889, (patent No. 409,512,) and that he has not disposed of any right or portion of right to any other person previous to this agreement.

"E. B. Preston agrees to furnish C. L. Smith with what his wants may be for this hose attachment, of any size manufactured, at a margin of twenty per cent above cost, said cost to be agreed upon, and he shall retain the right to sell these goods at market price, agreed upon between him and said E. B. Preston & Co.

"It is mutually agreed that E. B. Preston & Co. shall push the sale of this swivel by advertising, exhibiting and soliciting trade by their traveling salesmen or other employees; shall keep at all times in stock such quantities as will supply the market for demand, and to use their best efforts to create a large demand and a heavy sale of this article.

"Said E. B. Preston & Co. further agree that the royalty paid to said C. L. Smith shall equal at least four hundred and fifty dollars ($450) per annum. In case they do not reach this amount this agreement can be canceled by C. L. Smith, and a new one made that will be satisfactory to him.

"The said E. B. Preston & Co. further agree to pay C. L. Smith, on or before the 15th of each month following the sales of said hydrant swivels, a royalty of fifty cents per dozen on all ¾ hydrant swivels sold. If any larger size be manufactured hereafter, a price in royalty will be made that will be satisfactory.

"Said E. B. Preston & Co. will furnish said C. L. Smith with statements of sales of this swivel, with sales of each size, and E. B. Preston & Co.'s books shall be open to C. L. Smith at any and all times covering sales of this swivel.

"Signed this eleventh (11th) day of September, 1891.

E. B. PRESTON & CO.,

By C. E. Jenkins, *Mgr.*

C. L. SMITH."

Upon the trial in the circuit court appellant filed his bill of particulars, stating that he relied upon the special guaranty that the royalty to be paid to him under the contract should equal at least $450 a year; that at the time of the filing of the claim two years' default of the guaranty had been made, and that by reason of the death of Preston, and by virtue of section 67 of chapter 3 of the Revised Statutes, there was due to claimant, under the contract, eleven years, at $450, making a total claim of $5850. To this amount had been originally added the sum of $970.10 due on a certain judgment, which was afterwards paid and omitted from the amount claimed.

It was shown on the trial that the firm of E. B. Preston & Co. consisted of Preston alone, and that he had no partner at the time this contract was made; that his business was that of manufacturing and dealing in hose, brass goods, and the like; that Preston died April 27, 1895; that the appellant knew that he was the only member of the firm, and had seen him personally in reference to the contract before it was signed. The following letters were also introduced in evidence:

"CHICAGO, ILL., *Sept. 10, 1894.*

"*C. L. Smith, Esq., Springfield, Ill.:*

"DEAR SIR—We hereby notify you that we elect to, and do hereby, cancel a certain contract signed by you and E. B. Preston & Co., by C. E. Jenkins, manager, dated Chicago, Illinois, September 11, 1891, having reference to the manufacture and sale of a certain improved hose attachment and swivel, patented August 20, 1889, (patent No. 409,512,) and that we will proceed no further under that contract. We cancel this contract because the patented article has proved to be unsalable, and, the contract running for no definite time, we have the privilege, after the first year, of canceling the contract when we see fit.

"We do not by this letter mean to admit any liability to you, under this contract, except for royalties on the hose attachment and swivels actually sold by us thereunder. As to these royalties we are, and always have been, willing to account to you at any time.      "Yours truly,

E. B. PRESTON & CO."

"CHICAGO, *Sept. 17, 1894.*

"*E. B. Preston & Co., care Flower, Smith & Musgrave, Chicago, Ill.:*

"GENTLEMEN—I do not understand that you have the right to cancel, without my consent, a certain contract signed by your company and myself, dated Chicago, Illinois, September 11, 1891, and I hereby notify you that I shall adhere to that contract, and if you fail to perform your part of it I shall hold you liable for all damages.      C. L. SMITH."

By the will of Preston, given in evidence, he appointed three trustees, who were to take immediate charge upon his decease and have entire control of all his estate, and manage and conduct the same to the best advantage, and from the income therefrom to support and maintain his wife and daughter. The trustees were further empowered, at any time during the continuance of their trust and according to their best judgment, to change and convert such portion of his estate as they might deem profitable and expedient into such other valuable property or unquestionable interest-paying securities as should tend to the enhancement of the estate and insure a safe and profitable investment, and to execute the necessary

deeds, etc. It was also provided in the tenth clause as follows: "My expressed intention in regard to the disposal and management of my estate is as follows, namely: that aside from the amount required to pay the several legacies in this my last will and testament above named, the income or interest arising therefrom, so far as may become necessary, and, in case of its insufficiency, such portion of the principal estate, not to exceed in amount the sum of $6000 per year, as above mentioned and specified, shall be devoted and applied by said trustees to the support and maintenance of my said wife. * * * Upon the arrival at full age of my said daughter, Marguerite, the said trustees shall also, thenceforth and during the full term and end of her natural life, pay over the said Marguerite the whole of the income of said estate as fast as the same shall be received and collected by said trustees," etc.

A number of propositions to be held as law were tendered to the court on behalf of the estate, and refused. The amount of the judgment, $4335, which the court then gave, was obtained by deducting from amount claimed, viz., $5850, an agreed set-off of $524.49, and a rebate of interest from each year's payment that had not matured.

McGLASSON & BEITLER, for appellant.

FLOWER, SMITH & MUSGRAVE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The contract involved in this suit was before this court in the case of *Preston* v. *Smith*, 156 Ill. 359, Smith having sued Preston for the amount due for two years' royalties under the contract. The appellant claims that the decision in that case bars the appellee from insisting upon the defenses sought to be set up in this action. But the questions in that case were different from those presented here. There it was held merely that Preston

was bound to pay Smith $450 per annum for the two years during which Preston, before his death, had failed to pay, even though he did not manufacture or sell any goods under the patent, and that the privilege given Smith of canceling the contract on certain conditions did not make it an option contract, and therefore void under the statute. The expression used in the opinion, that "under the contract involved the sale and purchase were both absolute and complete," must be interpreted in that connection, as is shown further by the reasoning in the opinion on this point. It was also there said that this was an executed agreement completely performed, and that a recovery could be had on the common counts. This must also be read in the light of the facts in that case. So far as the two years' duration of the contract there involved was concerned, the contract was executed, and nothing remained to be done but to pay what had accrued under the contract.

Appellant also claims that this contract or agreement was an absolute sale of the patent right by Smith to Preston & Co., to be paid for in installments of at least $450 a year, as long as the patent right lasted. Of course, if this be so, the estate would be liable for the unpaid purchase money. But we cannot so construe the agreement. Taking into consideration all the terms of the agreement, we think it does not amount to a sale of the patent right by appellant to Preston & Co., leaving no interest whatever in the patent in appellant. On the contrary, he expressly retains the right to sell the article and the right to cancel the contract on certain conditions. Besides, the payments to be made are called "royalties" in the agreement, and are such in fact, Preston & Co. agreeing that they should be at least $450 per annum.

This brings us to the main question: Was this contract with Preston one of a personal character, which was terminated by his death? That contracts of a strictly

personal nature terminate upon the death of the party by whom the personal service is to be performed, and that in such cases the executors or administrators are not liable for the performance of the contract, is a well settled rule of law.   (1 Parsons on Contracts, *131; Addison on Contracts, sec. 396; Bishop on Contracts, sec. 600.)   The only difficulty arises in determining whether or not a contract comes within the rule.   As said in *Shultz* v. *Johnson*, 5 B. Mon. 497, this rule "is not defined and limited in the books with such precision as to render it always easy to determine whether particular cases fall within it or not."   Any contract from which it appeared that it was the intention of the parties that the service should be performed by the contractor in person alone, would terminate with his death. (*Janin* v. *Browne*, 59 Cal. 44.)   Where distinctly personal considerations are at the foundation of the contract, the relation of the parties is dissolved by the death of him whose personal qualities constituted the particular inducement to the contract. The whole question in each case is one for construction, and depends upon the intention of the parties.   (*Billings'* *Appeal*, 106 Pa. St. 558.)   In contracts in which performance depends upon the continued existence of a certain person or thing, a condition is implied that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance.   The implication arises in spite of the unqualified character of the promissory words, because, from the nature of the contract, it is apparent the parties contracted upon the basis of the continued existence of the particular person or chattel.   *Yerrington* v. *Greene*, 7 R. I. 589;  84 Am. Dec. 578;  *Taylor* v. *Caldwell*, 3 B. & S. 826;  113 E. C. L. 826.

In *Smith* v. *Wilmington Coal Mining and Manf. Co.* 83 Ill. 498, this court said:  "Text writers, noting the decisions on this subject, state the law to be, that when the contract with the deceased is of an executory nature, and the personal representative can fairly and sufficiently ex-

ecute all that deceased could have 'done, he may do so, and enforce the contract. (1 Parsons on Contracts,—6th ed.—p. *131.) Common law authorities sustaining the doctrine are: *Saboni* v. *Kirkman*, 1 M. & W. 418; *Wentworth* v. *Cook*, 10 A. & E. 42. Exceptional cases are, when the contract is of a personal character, or requires, in its execution, the exercise of peculiar skill or taste."

In *Marvel* v. *Phillips*, 162 Mass. 399, the plaintiff, having invented an improvement in conveyors and an improved elevator, assigned his invention to Phillips, the defendant's testator, taking from him an agreement in writing, by which Phillips agreed to manage the business for the joint benefit of both, to advance all funds requisite, and "to use all reasonable efforts to increase and supply the demand for the Marvel elevator and conveyor,—that is, to do all things which a wise and energetic owner of said patents, with ample financial ability, ought to do," and in a later clause bound himself and his legal representatives to Marvel and his legal representatives. The court held that the agreement was discharged by the death of Phillips, saying: "The chief undertakings were personal in their character. He was to endeavor to create a profitable business under the patents, and to manage it, to advance funds, for the repayment of which he was to look solely to the business, to use all reasonable efforts to increase and supply the demand for the elevator and conveyor, and to do all things which a wise and energetic owner of said patents, with ample financial ability, ought to do. This implies personal skill, attention, and ability of a high order. * * * The different parts of the agreement are not separable. * * * A contract to render such services and to perform such duties is subject to the implied condition that the party shall be alive and well enough in health to perform it. Death, or a disability which renders performance impossible, discharges the contract. Neither Phillips nor his estate is bound to furnish a substitute, nor is the plaintiff bound to accept one."

See, also, *Home Sewing Machine Co.* v. *Rosensteel*, 24 Fed. Rep. 583.

In *Oliver* v. *Rumford Chemical Works*, 109 U. S. 81, there was an agreement by Morgan, for the use of whose administratrix this suit was brought by the Rumford Chemical Works, that he would manufacture their self-raising flour, and that he would use all his business tact and skill, and all other means necessary, to introduce and sell the same, and to make the sale thereof as large as in any way possible during the continuance of his license, and in case he failed to perform his covenants the Rumford Chemical Works reserved the right to revoke the license and terminate the agreement. Morgan died soon after. Mr. Justice Blatchford, in delivering the opinion of the court, said: "The right is granted to Morgan alone,—to him personally,—with an agreement by him that he will enter on the manufacture of the self-raising flour, and that he will use all his business tact and skill to introduce and sell the flour. It is apparent that licenses of this character must have been granted to such individuals as the grantor chose to select because of their personal ability or qualifications to make or furnish a market for the self-raising flour, and thus for the acid, all of which was to be purchased from the grantor. The license was made revocable by the grantor on the failure of Morgan to perform his covenants and agreements. We have not overlooked the fact that the privilege granted to Morgan was to continue for five years. This means no more than that he was to have it for five years, if he should live so long and if the patent should not have expired. But it cannot have the effect to impart assignability to the privilege, or to prolong its duration beyond that of his life."

In this case it was "mutually agreed that E. B. Preston & Co. shall push the sale of this swivel by advertising, exhibiting and soliciting trade by their traveling salesmen or other employees; shall keep at all times in

stock such quantities as will supply the market for de-
mand, and to use their best efforts to create a large de-
mand and a heavy sale of this article." Appellant knew,
when he signed this contract, that Preston was the whole
firm, and he therefore contracted with Preston under the
name and style of E. B. Preston & Co., and all the cove-
nants and agreements in the contract were made with
Preston alone, although, in referring to him, the plural
pronoun is used, as grammatical usage required, its an-
tecedent being "E. B. Preston & Co." No inferences can
be drawn from such use of the pronoun. Preston agreed
to use his best efforts to create a large demand and a
heavy sale of this article. No difference is perceived be-
tween this obligation and the ones assumed in the cases
cited above, and this cannot be held to be such a contract
that an executor would be bound to carry out. Neither
does the election of appellant to rely only on the clause
stipulating that the royalties should amount to at least
$450 annually, alter the case. The contract is not sever-
able. All its parts must be construed together, and the
evident intention of the parties was, that Preston's "best
efforts" would or should create such a "large demand and
heavy sale of this article" that the royalties on its sale
would amount to $450 annually, as a minimum. It would
be unreasonable to hold that Preston's executors should
be bound to continue his business for more than ten years
in order to carry out this contract. It is well settled that
executors are not authorized to continue the business of
their testator unless it clearly appears from the will that
such is his intention, and if they do so without authority
they do it at their own risk. The will of E. B. Preston
will not bear such construction. All the expressions used
in it would be entirely proper and applicable in the will
of any person possessed of large property, and impose
no other duty on the trustees than to properly care for
the property. The contract having been determined by
the death of Preston, such event fixed the time to which

he was bound to pay, and his executors would not be liable under it beyond such date.

There are some other questions raised by appellant, but as they were not submitted to the trial court by any of the propositions asked to be held as law, nor raised in the Appellate Court, they come too late here.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*