## CARLOCK v. LA SALLE EXTENSION UNIVERSITY.

No. 10223.

United States Court of Appeals
Seventh Circuit.

Dec. 11, 1950.

Philip E. Ringer, Leonard A. Wells, Chicago, Ill., for appellant.

Donald W. Staehlin, Chicago, Ill., for appellee.

Before KERNER, DUFFY and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from the dismissal of a suit for commissions for sales alleged to have been made under the provisions of a written contract during a period from the death of the contractor to the expiration of the contract. The action was dismissed on the ground that the contract required the performance of personal services by plaintiff's decedent.

By the contract defendant appointed Gilbert Carlock its "exclusive Agency General Sales Representative acting as an independent contractor for the sale to, and enrollment of students in the LaSalle standard courses of instruction" in the states of California and Nevada and the territory of Hawaii. It provided for compensation according to a commission schedule attached, and that all expenses incident to the conduct of the business should be assumed and paid by the contractor; that his powers and duties might be delegated in whole or in part with the written approval of defendant, and in the event of such delegation, the contractor should not be liable for any commissions accruing thereunder, but defendant should assume "all commissions and the financing of registrars' accounts." The contract further provided for a minimum gross total of $190,000 acceptable sales a year and that all sales or enrollments were subject to approval and acceptance by defendant at its home office.

Plaintiff is the widow of the contractor and the residuary legatee under his will, and by order of the Probate Court she became the assignee of all claims under the contract. Her amended complaint alleged that under the provisions of the contract defendant agreed to pay certain fixed commissions on all sales whether made by the contractor or others in the territory, and in addition, certain special commissions and bonuses; that the contractor, in order

to carry out the terms of the contract to stimulate sales in his territory for the benefit of defendant, employed managers and secretaries, arranged for the appointment by defendant of 38 salesmen or "registrars" to assist the contractor in the sale to and enrollment of students, and furnished offices in Los Angeles, San Francisco and Honolulu, the first two under lease; that from the date of execution of the contract until the death of the contractor defendant paid him commissions on all sales in his territory whether made by him personally or by salesmen or registrars appointed as referred to above, and that after his death, Marvin Carlock, one of the registrars appointed by defendant and familiar with the business, was appointed administrator of his estate and undertook to perform the contract but defendant refused to permit him to do so. The complaint further alleged that after the death of the contractor defendant arranged for the continued use of his offices and equipment and the services of the personnel formerly employed by him, and continued to accept sales from salesmen whose appointment had been arranged by him, but refused to pay plaintiff any part of the remuneration provided for in the contract. She therefore demanded an accounting of all sales made in the contract territory from the date of death of the contractor to the expiration of the contract.

The parties agree that a contract covering personal service is terminated by the death of the party required to perform such service; their only dispute is as to whether the contract here involved was such a contract. As we view the case, we think the question presented is whether the court erred in holding as a matter of law that the contract, a copy of which was attached to the complaint, was one that required performance by the contractor himself.

■ Illustrations of the type of contracts which are generally held to require personal service were given in Mackay v. Clark Rig Bldg. Co., 5 Cal.App.2d 44, 42 P.2d 341, including, for example, an agreement of an author to write a particular book, an artist to paint a certain painting, a sculptor to produce a designated statue.

The court commented that the rule has been extended to the personal services of lawyers and physicians, but that it is settled that it does not apply where the services are of such character that they may be as well performed by others as by the individual with whom the contract was made, citing the building contract as an example of the latter type. See also Howard v. Adams, Cal.Sup., 105 P.2d 971, 130 A.L.R. 1003; California Packing Corp. v. Lopez, 207 Cal. 600, 279 P. 664, 64 A.L.R. 1412; Babcock v. Farwell, 146 Ill.App. 307, affimed, 245 Ill. 14, 91 N.E. 683; 6 Williston on Contracts (Rev.Ed.) § 1940. In 12 Am.Jur. Contracts, § 375, it is stated: "It must be admitted that the line of demarcation between the two kinds of contract under consideration is not very clearly marked in some instances. No doubt the facts and circumstances of each particular case will be taken into account in determining whether the contract is purely personal in its nature, and therefore determined by the death of the party, or one which the personal representative can complete as well as the deceased could have done."

■ We think the contract here is not one that falls readily into one category or the other, and that its classification must be determined, not as a matter of law, but upon a consideration of all the facts and circumstances of the case. It is clear that the only obligations imposed upon the contractor in our case were the affirmative one to produce $190,000 acceptable sales each year, and the negative one not to do anything that might have a derogatory effect on the reputation or standing of the defendant. It is not readily apparent why these duties could not be performed by decedent's representative who, the complaint alleges, was one of the registrars appointed by defendant.

The court in sustaining the motion to dismiss the complaint assumed as a matter of law that the contract required the performance of personal services by plaintiff's decedent. However, it seems to us that there are serious issues of fact which have a bearing on the decision of this case. These issues of fact are apparent from a consideration of the allegations of the

complaint and defendant's argument in its brief. According to the complaint, the contractor arranged for the appointment of 38 registrars to assist him in the performance of the contract and defendant paid him commissions on all sales in the territory whether made by him personally or by the registrars working under him. Defendant contends that the registrars operated under separate contracts having different commission schedules and were not performing the contract in suit, and that the contract contemplated the active management of the contractor and the training and supervision of the registrars by him. In this situation, these are facts which might well be set up as matters of affirmative defense, but they do not establish as a matter of law that the main contract was for services so personal that they could not be performed by the contractor's representative. Even though there were separate contracts with different commission schedules, it may be that they were subsidiary to the contractor's contract, the main contract, with provision for some compensation to Carlock also. Defendant does not deny that they were made within the general framework of the agency agreement whereby Carlock provided office, equipment and personnel, or that the sales of the 38 registrars were included in the $190,000 gross annual total required by the contract.

Defendant, arguing for an affirmance, urges, among others, that the decisions in Smith v. Estate of Preston, 170 Ill. 179, 48 N.E. 688, and White v. White, 274 Ill.App. 531, are decisive and controlling. We do not agree. The Smith case arose out of an agreement in which Preston, the deceased contracting party, agreed to use his best efforts to create a large demand and sale of a patented hose attachment and swivel. The agreement did not contain a fixed termination date. The case was tried upon the merits, and from all the evidence the court held the agreement was a personal undertaking upon the part of Preston which he could not transfer and that upon his death it did not devolve on his executors to perform.

In the White case plaintiff sued the administrators of the estate of Robert White, deceased, to recover money which plaintiff claimed as a balance due her from rents collected by the decedent in his lifetime, under a written agreement entered into between plaintiff and Robert White. The agreement provided that Robert was to manage a building and to collect rents and retain a percentage of the gross rentals collected by him in payment of his services. It was agreed by the parties that Robert was an agent and that his agency terminated by his death. Plaintiff's theory was that Robert was entitled to a commission only on the gross rentals actually collected by him. Defendants defended on the ground that Robert had not been compensated for obtaining leases which ran beyond his death. This defense, upon plaintiff's motion, was stricken and a judgment was entered for plaintiff. The Appellate Court held that defendants' affidavit of merits set up a legal defense, reversed the judgment of the trial court, and remanded the cause for further proceedings.

We conclude that the District Court erred in holding as a matter of law that the contract in suit was one for personal service, terminable on the death of the contractor, and in dismissing the action on the motion of the defendant. The judgment is therefore reversed and the cause remanded for further proceedings.