WINFRED C. MULLEN *v.* LOIS THOMPSON WAFER, EXECUTRIX, ESTATE OF RUFUS W. WAFER

5-5873                                      480 S.W. 2d 332

Opinion delivered May 8, 1972

[Rehearing Denied June 19, 1972.]

*Floyd J. Lofton,* for appellant.

*Howell, Price, Howell & Barron,* for appellee and cross-appellant.

FRANK HOLT, Justice. The appellant instituted this action for rescission of a written contract between him and appellee's deceased husband. The Chancellor denied rescission, found the contract to be severable in its terms, and reduced the agreed purchase price for Wafer's accounting business. From that decree appellant brings this appeal and appellee cross-appeals. For reversal appellant contends that the contract is completely unenforceable because it is one for personal services. On cross-appeal appellee asserts that the contract is enforceable in its entirety.

The deceased, Rufus Wafer, was a public accountant. On August 19, 1969, appellant and Wafer made a written agreement "preliminary in nature" by which appellant purchased Wafer's "accounting business and equipment including all accounts in connection therewith" being conducted by Wafer from his offices. It was agreed that subsequently the parties would "execute a security agreement note covering this transaction." The purchase price was $30,000. A down payment of $5,000 was made at the time of this written agreement and the $25,000 balance was "to be paid annually on or before April 16 of each year beginning in 1970 and continuing for a period of five years." Wafer, the seller, agreed "to remain active in the accounting business with buyer [appellant] for a period of two years during which time Buyer shall pay" Wafer an annual salary of $1,625 to be paid at the rate of $125 per week "for thirteen consecutive weeks beginning January 1, 1970 and January 1, 1971." Further it was agreed that Wafer would receive 1/2 of the income from any new business which he brought to appellant,

and this percentage would apply as long as the new account continued with appellant. Wafer also agreed "to cooperate fully with the Buyer if effecting a satisfactory transfer of accounts including introduction of Buyer to clients and giving all encouragement possible to the continuation of business relations."

It appears from the oral argument that on December 1, 1969, or about 3 1/2 months after the written agreement, Wafer moved from his offices and business address and began occupying offices with appellant. From the record it appears that on January 1, 1970, in accordance with their preliminary agreement, appellant and Wafer executed additional writings which consisted of a promissory note for the $25,000 balance and a security agreement. The latter acknowledged Wafer to have a security interest in all the equipment, supplies and accounts he had sold to appellant "and all additions and accessions thereto" to secure the balance of the purchase price reflected in the promissory note. The note was payable in annual installments in accordance with the terms of the original agreement. Less than a month thereafter, or on January 27, 1970, Wafer died. Thereupon appellant filed his complaint seeking a rescission of the contract of sale and cancellation of the note on the basis that the contract was contingent upon Wafer providing personal services and that Wafer's death made performance impossible. The appellee answered and counter-claimed for specific performance of the contract. Appellant's demurrer to appellee's counter-claim was denied and following a trial on the merits of the case, the Chancellor reduced the $25,000 purchase price balance to $12,500.

In reply to appellant's argument that the contract is unenforceable because it is one for personal services, the appellee asserts that the contract provides only for the sale of the accounting business and the transfer was performed and effected before Wafer's death. Appellee argues that the only personal characteristics of the contract consisted of Wafer's agreement that he would work for appellant as a salaried employee for 2 years and Wafer would receive 1/2 of the income from any new business he brought to appellant. Appellee contends that these

aspects of the contract were not "conditions precedent to the transfer of the business." Neither the appellant nor the appellee on cross-appeal favors us with an abstract of the testimony. The appellant designates the pleadings and decree. Both parties rely upon the written instruments to support their respective contentions.

The contracts before us consist of the preliminary writing on August 19, 1969, and the note and security agreement dated January 1, 1970. When we analyze these writings, we are of the view that it was contemplated by the parties that the contract embodied and provided for the personal services of Wafer, the seller. We have long recognized the principle that when parties contract for personal services the death of one who is to render these services will result in the contract being unenforceable. *Arlington Hotel Co.* v. *Rector,* 124 Ark. 90, 186 S.W. 622. There we stated:

"It is a well settled principle in the interpretation of contracts that where parties contract for a service that is purely personal, or with reference to the continued existence of some particular thing constituting the subject matter of the contract, if the person dies or the thing ceases to exist, then the performance of the contract will be excused because impossible. . ."

See also *Collins* v. *Woodruff,* 9 Ark. 463. In 17A C.J.S., Contracts § 465, the general rule is:

"Contracts to perform personal acts are considered as made on the implied condition that the party shall be alive and capable of performing the contract, so that death or disability, including sickness, will operate as a discharge, termination of the contract, or excuse for nonperformance. . ."

In the case at bar, the contract provides for the sale of a professional accounting business with the understanding that the seller would remain active in the business and assist the buyer for two years. Beginning January 1, 1970, the seller was to receive an annual salary of $1,625, which was to be paid at the weekly rate of $125 during

the first 13 consecutive weeks of each of the 2 years. We think this specific provision for this particular period of time is significant because it coincides with the time of the year when income taxes are due and payable. It is during this time, of course, that the servicing of an accountant's customers' accounts for income purposes is particularly important. Furthermore, the $5,000 annual payment was due on or before April 16 of each year. This provision also reflects the importance of this period of time to the parties. Inasmuch as Mr. Wafer died on January 27, 1970, or within a month following completion of these writings, we must hold that his death cancelled the personal services aspect of the contract. Of course, his death at this time made it impossible to "cooperate fully" with appellant in effecting "a satisfactory transfer of accounts," which included introduction of Wafer's clients to appellant and "giving all encouragement possible to the *continuation* of business relations" (emphasis added). Appellant specifically contracted for Wafer's services for a period of two years.

In the circumstances, we agree with the Chancellor that the contract is severable and can be apportioned. See *Jones* v. *Gregg*, 226 Ark. 595, 293 S.W. 2d 545 (1956); *Harris Lbr. Co.* v. *Wheeler Lbr. Co.*, 88 Ark. 491, 115 S. W. 168 (1908); *Duffie* v. *Pratt*, 76 Ark. 74, 88 S.W. 842 (1905); *Collins* v. *Woodruff, supra*. Therefore, the sale of the physical assets for the separately agreed contract price of $4,682.20 is enforceable. It appears that these physical assets consisted of office equipment and supplies necessary in appellant's accounting business. The contract being unenforceable with reference to personal services and enforceable with respect to the sale of the physical assets, the decree is accordingly affirmed as modified.

FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I would affirm this decree without modification. This appeal was brought here on an abbreviated record. The record designated consisted only of the pleadings, the orders and decree of the chancery court. The first point for reversal

has to do only with alleged errors in the overruling of appellant's demurrer to the complaint. The other points for reversal are:

II. The Court erred in awarding damages to the counterclaimant, because the writings do not provide for such a remedy.

III. The Court erred in not construing the writings against the author, to-wit, Mr. Wafer.

IV. The Court erred in finding that the Contract for personal services was severable.

The agreement between the parties contained the following clauses:

Seller agrees to sell and Buyer to buy the accounting business and equipment including all accounts in connection therewith presently being conducted by Seller from his offices at Pyramid Life Building, Little Rock, for the sum of Thirty Thousand Dollars ($30,000.00), Five Thousand Dollars ($5,000.00) to be paid down, receipt of which is acknowledged, and Five Thousand Dollars ($5,000.00) to be paid annually on or before April 16 of each year, beginning in 1970 and continuing for a period of five years.
* * *

In the security aggrement to be executed all equipment, supplied and accounts shall secure the payment of the purchase price. * * *

It is further agreed that fifty percent of the income of all new business brought in by Seller at any time hereafter shall be paid to Seller for such period as that account shall continue as part of the business of the Buyer.

The security agreement contains the following:

Winfred C. Mullen, Northeast Corner of Fifth and Victory Streets, Little Rock, Arkansas (hereinafter

called "Debtor"), for a valuable consideration hereby acknowledged, hereby grants to Rufus W. Wafer, (hereinafter called "Security Party"), a security interest in the following property and any and all additions and accessions thereto (hereinafter called the "Collateral"):

All equipment, supplies and accounts (from Wafer & Co.) to secure payment of the Total Debt of Twenty-five Thousand Dollars ($25,000.00), and all extensions and renewals thereof; all other indebtedness at any time hereafter owing by Debtor to Secured Party as well as the discharge of all obligations imposed upon Debtor hereunder.

Clearly, the equipment, supplies and accounts purchased were not personal services.

The record brought up and the arguments made, both in appellant's brief and in oral argument, show that appellant was contending that the decree should be reversed as a matter of law. I do not agree that it should be and cannot agree that the matter before us is only a question of law.

In the court's decree, I find the following:

* * * from the evidence taken ore tenus at the bar of the Court, the Court doth find that the provisions of the contract sued upon are severable and that the rescision of the contract and cancellation of the note as prayed for by the plaintiff should not be granted; that plaintiff was an experienced businessman and was aware that Mr. Wafer was getting along in years, had heart trouble, and that it would not be expected that the business would pay for itself within one year.

The Court further finds that while the death of Rufus W. Wafer does not vitiate the contract, that plaintiff was not properly servicing some of the accounts and was not properly crediting income from the accounts to Wafer in the bookkeeping; that while an

exact computation is not possible under the present existing proof, the Court finds that in equity plaintiff should have the benefit of a reduction in the purchase price by reason of Rufus Wafer's inability to assist the plaintiff in bringing his customers to the plaintiff and assist him in keeping them. That the contract price should be reduced in the total sum of $12,500.00 and that defendant should have judgment on her cross-complaint for the balance due under the contract—namely, $12,500.000

In my opinion, no one can say as a matter of law that the contract was one for personal services only or that the contract was not severable. The question whether a contract is one for personal services is to be determined from all the facts and circumstances of the particular case. This rule is expressed in *Carlock* v. *LaSalle Extension University*, 185 F. 2d 594 (7th Cir. 1950). That case is so closely parallel to this, that I think it should govern. If so, I do not see how the majority arrives at the modification. Not only is it necessary, in order to do so, to say as a matter of law that the contract was for personal services, except for the sale of equipment and supplies, but also it requires overlooking the fact that the accounts of Wafer and Company were sold.

While it is true that we will indulge no presumption that the portions of the record omitted from an abbreviated record without objection support the action of a trial court, it is necessary that the appellant bring up sufficient record touching upon the points urged by him to demonstrate error. Statutory provision for abbreviation of the record certainly should not relieve the appellant from demonstrating that error from the record before the court. While we cannot presume that those portions of the record not before us support the findings of the trial court, we cannot presume that they do not, as the majority has done. From the record before us, I cannot say that the chancellor made an incorrect determination. See *Kimery* v. *Shockley*, 226 Ark. 437, 290 S.W. 2d 442.

I am authorized to state that Mr. Justice Jones joins in this dissent.